## The First National Bank of Cobleskill, New York, v. David Emmitt.

1. NEGOTIABLE NOTE — *Rights of Indorsee — Burden of Proof.* The plaintiff being in possession of a negotiable note, properly indorsed, it will be presumed that he owns and acquired the note in good faith for full value in the usual course of business before maturity, without notice of any circumstance that would impeach its validity; and where the defendant, who is the maker of the note, claims that the plaintiff does not so hold it, it devolves upon him to prove his claim.

2. FINDING, *Not Sustained.* The evidence examined, and *held* to be insufficient to sustain the finding that the holder was not an innocent purchaser of the note in suit.

*Error from Saline District Court.*

REPLEVIN by the *First National Bank of Cobleskill*, N. Y., against *Emmitt*. Judgment for defendant. Plaintiff comes to this court. The opinion states the facts.

*Bishop & Burch,* and *Garver & Bond,* for plaintiff in error.
*R. A. Lovitt,* and *William A. Norris,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: David Emmitt executed a promissory note to M. J. Wellslager for $342, payable six months after date, at 12 per cent. interest per annum from date, and, to secure the same, he executed a chattel mortgage upon certain personal property. The note was duly indorsed to the First National Bank of Cobleskill, N. Y., and as payment thereof was not made at maturity, the bank demanded the delivery of the mortgaged property, which was refused. The present action for the recovery of the property was then begun. The plaintiff alleged the due execution of the note and mortgage, the indorsement and transfer of the same before maturity, the failure to pay the note when due, and the demand and refusal to deliver the mortgaged property. The answer of the defendant was a general denial, under which he contended that the plaintiff was not entitled to recover, because the note upon which the action was based was usurious and could not be made the basis of any judgment. Upon the trial, it appeared that the note represented the last of a series of transactions, commencing in 1884 and continuing until 1889, in which Wellslager had loaned money to Emmitt at a rate of interest exceeding 12 per cent. per annum, and a computation of the excess interest throughout these transactions would show that it equals in amount the note in question. While the testimony shows without doubt that the transactions were usurious, we are unable to find any testimony that the plaintiff had any notice or knowledge of the fact that the note in suit represented or contained interest in excess of 12 per cent. per annum. Upon its face it was legal, and it was indorsed and transferred by Wellslager to the bank in the usual form. Being in the possession of the note properly indorsed, it will be presumed that the bank owns and acquired the note

in good faith for full value, in the usual course of business, before maturity, and the burden rested upon the defendant to show that the bank was not a holder for value, and that it did not purchase the note in the usual course of business, for value, without notice. In all the evidence, there is nothing to show that in any of the transactions Wellslager loaned the bank's money, or that the bank had any knowledge of the rate of interest which had been charged by him. The testimony is that he had negotiated and sold this note, as well as a number of others, to the bank, but in every transaction it is shown to have been a sale and purchase of the notes, and not that Wellslager was the agent of the bank for the purpose of loaning its money. Notwithstanding this state of the case, the jury found that the money loaned upon the note and mortgage was the bank's; that the bank knew the rate of interest which had been charged upon the note; that it had authorized Wellslager to charge more than the legal rate; and that it received a portion of the usurious charge which Wellslager had made. The only testimony in the case which touches this subject is directly in conflict with the findings of the jury. To sustain these findings, counsel for defendant in error calls attention to the following testimony by the cashier of the bank, who stated that,

1. Negotiable note—rights of indorsee—burden of proof.

"We have bought notes of him [Wellslager], and I have known him since 1876. I have known him in a business way since September 19, 1884. The reason we have dealt with Wellslager is to get an outlet for our money. In June, 1885, I went west and saw Wellslager, and told him that if he had notes and we had money, we would buy them of him on a basis of 8 per cent. interest to plaintiff. I, as cashier, made this arrangement."

It will be readily seen that this testimony furnishes no support for the findings. In connection with the testimony quoted, the same witness stated that Wellslager had never loaned any money for the bank, nor had acted as its agent in that capacity. The bank had simply purchased notes from

him at their face value, and had no knowledge of the rate of interest which had been charged by Wellslager. Wellslager testified that he sold and transferred the note· to the bank within three or four days from the time he made the loan, and received $342 for the same, which was just the face of the note. If there was any proper evidence which supported the findings and verdict of the jury, they could not be set aside, even though the great preponderance of the evidence appeared to be against them; but, as in this case, where there is no material evidence to support the findings, and in fact where all the evidence is against them, we have no other alternative than to set them and the verdict aside.

2. Finding, not sustained.

The judgment of the court will be reversed, and the cause remanded ·for a new·trial.

All the Justices concurring.