## Callahan v. Louisville Dry Goods Co.

(Decided November 22, 1910.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Note—Action Thereon—Plea in Abatement—Pendency of Another Suit—Sufficiency of Plea—Responsive to Petition.—In an action on a note executed by defendant to the G.-H.-C. Company and which had been transferred by it to plaintiff, defendant pleaded by way of abatement the pendency of another suit in another court wherein a recovery was sought against him on the same note. Plaintiff denied the pendency of the said suit and pleaded it had been dismissed without prejudice, and filed copies of the record showing this fact. To this reply a demurrer was overruled. Held, this contention would be sound if the pleading to which the demurrer was filed was responsive to the matter set up in the answer. The sufficiency of a petition cannot be raised by an attack upon another pleading not responsive to it.

2. Same—Demurrer to Reply—Plea to Merits.—But even though the demurrer to the reply did not reach back to the petition the judgment ought not to be permitted to stand, there being no plea to the merits of the case if the petition did not state a good cause of action. In the petition it is alleged that the note sued on was executed and delivered to the G.-H.-C. Co.; that plaintiff was incorporated in January, 1907, and succeeded said company in business and became the owner of all its assets, and that it was at the date of the institution of this suit and had been at all times since it succeeded the G.-H.-C. Co. in business and acquired its assets and that the note was past due and no part had been paid. Held, these allegations are sufficient to warrant and support a default judgment.

3. Negotiable Instrument—Holder in Due Course—Right to Maintain Action in His Own Name.—Under section 51 of the Negotiable Instruments Act, providing that "the holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument," and section 190 defines the words "holder of a negotiable instrument" to mean the payee or indorsee of a bill or note who is in possession of it or the bearer thereof, and section 59 provides that every holder is deemed prima facie to be the holder in due course, and section 49 thereof provides that "when the holder of an instrument payable to his order transfers it for value without indorsing it the transfer vests in the transferree such title as the transferrer had therein, and the transferree acquires in addition the right to have the indorsement of the transferrer. But for the purpose of determining whether the transferree is a holder in due course the negotiation takes effect when the indorsement is actually made." Reading these four sections together it is evident that the holder of

a note is deemed to be the holder in due course, that is to have come lawfully in possession of it, and he may maintain an action on it in his own name.

W. B. DIXON and GEORGE H. BRIGGS, for Appellant.

JAMES R. DUFFIN and PAUL BLACKWOOD, for Appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Plaintiff instituted its suit in the Jefferson circuit court, wherein it sought to recover of the defendant, Ed. Callahan, $752.68, with interest from March 1, 1907, on a promissory note which had been executed by defendants to the Grauman-Henchey-Cross Company, and which had been transferred by the latter company to plaintiff. Defendant pleaded, by way of abatement, the pendency of another suit in the Breathitt circuit court, wherein a recovery was sought against him on the same note. In its reply the plaintiff denied the pendency of said suit in the Breathitt circuit court, and pleaded affirmatively that said suit had been dismissed without prejudice, and filed certified copies of the record of said court showing this fact. To this reply a demurrer was interposed, and, being overruled, defendant declined to plead further, and judgment was entered in accordance with the prayer of the petition. From that judgment this appeal is prosecuted and a reversal sought on the ground that the demurrer to the reply brought before the court the entire record for inspection, and, upon consideration, the judge should have held the petition faulty.

This contention would be sound if the pleading to which the demurrer was filed was responsive to the petition, but the reply was responsive to the matter set up in the answer and this sought to avoid plaintiff's right to sue in the Jefferson circuit court, but in nowise questioned or put in issue any allegation of the petition. If defendant regarded the petition as defective and desired to question its sufficiency, the court's attention should have been called to such defect by demurrer, or plea properly made in the answer. But the sufficiency of the petition cannot be raised by an attack upon another pleading not responsive to it.

Newman, in his Pleading & Practice, Sec. 542a, thus states the rule:

"This rule, that the court will consider the whole record on demurrer, does not authorize the consideration of other parts of the pleading not embraced in or relating to the part to which the demurrer is filed. Thus a demurrer to the petition cannot bring before the court an allegation made in an answer filed in the case; nor does a demurrer to one paragraph of the petition, or to the answer to such paragraph, involve in its decision an inquiry into the validity of any other paragraph of the petition. But as before said, if the paragraph of the answer demurred to is a response to a separate paragraph or cause of action set out in the petition, the demurrer reaches back to that paragraph or cause of action, but none other."

In Dean v. Boyd, 39 Ky. 169, this court held that a demurrer to a plea in abatement did not bring the petition before the court, or even authorize the court to consider it. This case is decisive of the question under consideration.

But even though the demurrer to the reply did not reach back to the petition, the judgment ought not to be permitted to stand, there being no plea to the merits of the case, if the petition did not state a good cause of action. In the petition it is alleged that the note sued on was executed and delivered by the defendant to the Grauman-Henchey-Cross Company, that plaintiff was incorporated in January, 1907, and succeeded said company in business and became the owner of all its assets, and that it was, at the date of the institution of this suit, and had been at all times since it succeeded the Graumen-Henchey-Cross Company in business and acquired its assets, the owner of and in possession of said note. It is further alleged that the note was past due and no part of it had been paid. These allegations are sufficient to warrant and support a default judgment, for they clearly set forth the due execution and delivery of the note by the defendant to the Grauman-Henchey-Cross Company—the manner in which plaintiff acquired it—its maturity and non-payment. It is true, the petition does not in terms allege that the note was assigned to the plaintiff by the Grauman-Henchey-Cross Company, or endorsed by said company to plaintiff, but the allegation that it is the owner and in the possession of said note is sufficient to support its cause of action thereon, for Sec. 51 of the Ne-

gotiable Instruments Act provides that "The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument." And Sec. 190 of said Act defines the word "holder" of a negotiable instrument to mean "the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof." And Sec. 59 provides that "every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." And Sec. 49 thereof provides that "where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made." Reading these four sections together, it is evident that the holder of a note is deemed to be the holder in due course, that is, to have come lawfully into possession of it; and he may maintain an action on it in his own name. No endorsement is necessary to invest the holder with the presumption of ownership, but possession alone presupposes ownership in due course, and this presumption is indulged until overcome by proof supported by proper plea. Measured by this rule the petition states a good cause of action, and the judgment is affirmed.